# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **VICKIE LYNN LAMB VASSER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 7:12-CV-1757-VEH |
| | ) |
| **CAROLYN COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Vickie Lynn Lamb Vasser ("Ms. Vasser") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on September 16, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB") and Supplemental Security Income ("SSI").[2] Ms. Vasser timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Vasser was 46 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *See* Tr. 137. She has completed an 11th grade education. Tr. 161. Her past work experience includes employment as a laundry worker, cook, daycare operator, and restaurant manager. Tr. 177. She claims she became disabled on May 15, 2007, due to diabetes, back and leg pain, insomnia, bipolar disorder, and depression. Tr. 60-62, 66-71, 156. Her last period of work ended on that same date. Tr. 156.

On November 4, 2008, Ms. Vasser protectively filed a Title II application for a period of disability and DIB. Tr. 39. She also protectively filed a Title XVI application for SSI on that date. *Id.* In both applications, she alleged her disability

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

began on May 15, 2007.[4] On January 28, 2009, the Commissioner initially denied these claims. *Id.* Ms. Vasser timely filed a written request for a hearing on April 1, 2009. *Id.* The ALJ conducted a hearing on the matter on May 14, 2010. *Id.* On June 21, 2010, he issued his opinion concluding Ms. Vasser was not disabled and denying her benefits. Tr. 49. She timely petitioned the Appeals Council to review the decision on August 25, 2010. Tr. 14. On April 2, 2012, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Vasser filed a Complaint with this court on May 2, 2012, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on August 13, 2012. Doc. 5. Ms. Vasser filed a supporting brief (Doc. 8) on September 27, 2012, and the Commissioner responded with her own (Doc. 10) on November 26, 2012. With the parties having fully briefed the matter, the court has carefully considered the record and reverses the decision of the Commissioner.

## **STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.

---

[4] Ms. Vasser amended her alleged onset date of disability to July 1, 2009, via a letter from her attorney dated May 20, 2010. Tr. 136.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act

and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national

---

[5]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

### **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

After consideration of the entire record, the ALJ made the following findings:

1. Ms. Vasser met the insured status requirements of the Social Security Act through December 31, 2012.

2. She had not engaged in substantial gainful activity since July 1, 2009, the alleged disability onset date.

3. She had the following severe impairments: diabetes mellitus; lumbar degenerative disc disease; and bipolar disorder. She also has the non-severe impairments of anxiety disorder, high blood pressure (which is controlled through medication and obesity.

4. She did not have an impairment or combination of impairments that met

or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. She had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) excep the mental RFC set forth is Exhibit 4F with the following modifications and additional limitations: she could lift 20 pounds occasionally and 10 pounds frequently; she could stand and walk six hours out of an eight-hour workday; she could sit for six hours out of an eight-hour workday; add a sit/stand option (ability to alternative between sitting and standing as need be, but still complete job); unlimited push/pull; she could never climb ladders, ropes, or scaffolds; she could frequently perform remaining postural activities; no manipulative, visual, or communicative limitations; environmentally she must avoid concentrated exposure to dangerous moving machinery, unprotected heights, and bodies of water; she must avoid concentrated exposure to extreme cold; and she experienced mild to moderate pain.

6. She was unable to perform any past relevant work.

7. She was born on February 12, 1964, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability date.

8. She had at least a high school education and was able to communicate in English.

9. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10. Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11. Ms. Vasser had not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision.

Tr. 41-49.

## ANALYSIS

**I.   Introduction**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Vasser urges this court to reverse the Commissioner's decision to deny her benefits on four grounds: (1) the ALJ's improperly considered the opinion of her treating physician; (2) the ALJ inadequately explained the inconsistency between the vocational expert's testimony at the hearing and the Dictionary of Occupational Titles; (3) the ALJ failed to properly apply the pain standard; and (4) the ALJ improperly assessed her mental RFC. Doc. 8 at 5-6. The court agrees with Ms.

---

[6]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Vasser's first objection and finds that it merits remand

**II.     The ALJ reversibly erred in his treatment of the medical opinion evidence concerning Ms. Vasser's psychological limitations.**

Ms. Vasser first argues that the ALJ erred in his treatment of the medical opinion evidence. She is correct. The ALJ dismissed the opinion of Ms. Vasser's treating psychiatrist for generic reasons upon which he did not sufficiently elaborate. Even were this decision somehow justified, the ALJ aggravated his error by relying exclusively on the contradictory opinion of a non-examining physician in formulating Ms. Vasser's mental RFC. Considered together, these actions constitute legal error requiring remand.

*A.    The ALJ did not adequately justify his decision to discredit Ms. Vasser's treating physician's opinion.*

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when

- the treating physician's opinion was not bolstered by the evidence,

- the evidence supported a contrary finding; or

- the treating physician's opinion was conclusory or inconsistent with his

9

or her own medical records.

*Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, and those reasons are supported by substantial evidence, there is no such error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (per curiam).

In this case, Dr. Sayed Aftab treated Ms. Vasser periodically between 2007 and 2010 at Indian Rivers Mental Health Center. Tr. 223-27, 265-91, 392-410. In August 2008, he diagnosed her with bipolar and anxiety disorder. Tr. 223. Relevant here is a form he filled out on July 10, 2009, rating various aspects of her functioning ability. Tr. 265-67. In that form, he opined that she had only a mild degree of deterioration in her personal habits and in her ability to understand, remember, and carry out simple instructions. He then estimated that she had a "moderate" degree of impairment in:

- her ability to interact appropriately with the general public;
- her ability to ask simple questions or request assistance;
- her ability to get along with co-workers or peers;

10

- her constriction of interests;

- her ability to make simple work-related decisions; and

- her ability to respond appropriately to supervision.

Tr. 265-66. He stated she had a "marked" degree of impairment in:

- her ability to understand, remember, and carry out complex instructions;

- her ability to understand, remember, and carry out repetitive tasks;

- her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;

- her ability to sustain a routine without special supervision;

- her ability to respond appropriately to changes in the work setting; and

- her ability to be aware of normal hazards and take appropriate precautions.

Tr. 266-67. He finally opined that she had "extreme" impairment in (1) her ability to maintain attention and concentration for extended periods; and (2) her ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 266.

In his opinion, the ALJ gave "little weight" to this opinion. He noted that Dr. Aftab had found Ms. Vasser markedly or extremely impaired in many of the relevant

areas. He then dismissed it as "inconsistent with the entire medical record and and the finding of the undersigned." He does not specify after this statement precisely why and how Dr. Aftab's opinion was inconsistent with the record. He simply moved onto his analysis of the State Agency medical physician's physical assessment of Ms. Vasser.[7]

This justification is reversibly vague. When confronted with a medical opinion on a claimant's functional limitations, an ALJ must state *both* the weight given to these opinions *and* the reasons therefor. *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1266 (M.D. Fla. 2012) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). Here, the ALJ gave Dr. Aftab's opinion a weight designation, but he failed to explain why this was so with the required particularity.

---

[7]Later in his opinion, the ALJ references the sporadic nature of the treating relationship between Dr. Aftab and Ms. Vasser; the evidence showed that she had missed many appointments with him over the years. The ALJ also emphasized elsewhere that Ms. Vasser had shown notable (self-reported) improvement when she consistently took her medication. The court is unsure whether this qualifies as the purported justification (and the ALJ should make this clear on remand). If so, it ignores that Dr. Aftab encouraged Ms. Vasser to apply for disability – even after he documented some of these "improvements" – because it would be "difficult for her to sustain herself at this point." It also ignores that he filled out the functional limitations form referenced above *after* she had evinced improvements from her medications.

The court must reverse and remand his decision for that reason. *See Poplardo v. Astrue,* No. 3:06–cv–1101–J–MCR, 2008 WL 68593 at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *Paltan v. Comm'r of Social Sec.,* No. 6:07–cv–932–Orl–19DAB, 2008 WL 1848342 at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

### B. *The ALJ also erred by relying only on the contradictory opinion of a non-examining physician.*

Even if the ALJ had "good cause" to discredit Dr. Aftab's opinion, he certainly erred by instead crediting the contradictory opinion issued by Dr. Lee Blackmon, M.D., a State Agency physician who did not examine Ms. Vasser. On January 27, 2009, Dr. Balckmon filled out a Psychiatric Review Technique Form ("PRTF") and a Mental Residual Functional Capacity Assessment ("mental RFC") concerning Ms. Vasser. As the ALJ notes, Dr. Blackmon concluded that Ms. Vasser "had not more than a moderate degree of limitation in any area due to mental impairments." This assessment pointedly diverged from Dr. Aftab's, and yet the ALJ afforded it "great weight" because it was "consistent with the medical record and the findings of the undersigned." In fact, the ALJ rotely incorporated Dr. Blackmon's mental RFC

assessment into his own RFC determination and into the hypothetical question he posed to the vocational expert at the hearing. This exclusive reliance on the divergent opinion of a non-examining physician also constituted reversible error. *Lamb v. Bowen*, 847 F.2d at 703 ("The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician.").

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner did not apply proper legal standards in reaching her final decision. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this the 30th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge